UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-20406-GAYLES
MAGISTRATE JUDGE P. A. WHITE

REYNYER AGUILERA,                    :

        Petitioner,                  :

v.                                   :           **SUPPLEMENTAL**
                                                 REPORT OF
JULIE L. JONES,                      :           MAGISTRATE JUDGE

        Respondent.                  :

_____

## I. Introduction

Reynyer Aguilera, who is presently confined at the De Soto Correctional Institution Annex in Arcadia, Florida, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in case number 02-24536 entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the Undersigned for consideration and report pursuant to United States Code Title 28, Section 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The undersigned has reviewed the petition for writ of habeas corpus (DE# 1), the memorandum addressing limitations (DE# 11), the Respondent's response to an order to show cause (DE# 10), appendixes of exhibits (DE# 10, 13), and the Petitioner's replies (DE# 12, 14). The Petitioner's reply had not been docketed at the time the initial Report and Recommendation was filed. See (22 at 1, n.1). The Reply was subsequently docketed and is considered timely filed pursuant to the prisoner mailbox rule. (DE# 23). This matter

1

was re-referred to the undersigned for additional Report and Recommendation in light of the Petitioner's timely reply. (DE# 24).

Construing the *pro se* movant's arguments liberally, the Petitioner appears to raise the following claims in his Section 2254 petition:

1. Counsel was ineffective for failing to file a motion *in limine* or object to introduction of the Petitioner's statements, and failing to preserve the issue for appellate review;

2. Counsel was ineffective for failing to object to the prosecutor's improper bolstering which resulted in a guilty verdict and failed to preserve the issue for appellate review;

3. Counsel was ineffective for failing to object to the erroneous standard manslaughter jury instruction that deprived the Petitioner of due process and a fair trial;

4. Counsel was ineffective for failing to file a motion for new trial with regards to the erroneous jury instruction and failing to preserve the issue for appellate review;

5. Counsel was ineffective for misadvising the Petitioner about his chances of securing a manslaughter conviction, which caused him to reject a favorable plea offer;

6. Counsel was ineffective for misadvising the Petitioner about the maximum sentence he could receive if he was found guilty of manslaughter, which caused him to reject a favorable plea offer;

7. Convictions for both second-degree murder with a firearm and the use of a firearm during the commission of a felony, violated double jeopardy; and

8. Counsel's ineffective assistance resulted in cumulative error.

## II. Procedural History

The Petitioner was charged in Florida case number 02-24536 with:[1] Count (3), second-degree murder with a firearm; Count (4), aggravated battery with a deadly weapon (asp or baton); Count (5), aggravated battery with a deadly weapon (firearm); and Count (6), display or use of a firearm while committing a felony. (DE# 10-2 at 78).

The charges arose when the Petitioner confronted his girlfriend when she returned from Miami Beach with a group of friends. Briefly, the pertinent facts are:[2]

> Aguilera, age twenty-two, lived with his girlfriend Kristin, age twenty, and their 22-month-old daughter. Aguilera and Kristin had lived together about three years, and Aguilera considered her to be his wife.
>
> On a Friday night that was to prove tragic, Kristin called Aguilera to tell him that she and her step-sister were going to go out with other young women. Aguilera was upset that she was going out without him. Kristin did not tell Aguilera that two young men, Danny and Ignacio, would be accompanying the group to a Miami Beach night club. Aguilera was suspicious, and he and a friend followed the group in the friend's car until that car had a flat tire.
>
> After repairing the tire, Aguilera called another friend, codefendant Abdel Berdecia, to meet him at Aguilera's father's house so that they could try to find Kristin and her group. Ultimately, Aguilera, Berdecia, and two other men drove to the home of one of the young women with Kristin, Melissa, to wait for them. They arrived at the house at about 2:00 a.m. and waited in a

---

[1] The Petitioner was charged along with two co-defendants, Humair Jawaid and Abdel Berdecia.

[2] This summary of the facts appears in the Third District Court of Appeal's opinion; they are consistent with the record. See (DE# 19-2 through 19-8).

3

car.

Berdecia had a concealed weapons permit, and that night he had his loaded, holstered handgun with him. Aguilera knew that Berdecia usually carried a handgun and that he had a permit to do so. When Berdecia got in the car that night, Aguilera saw that he had the gun with him. Aguilera asked Berdecia to let him hold the gun, but Berdecia refused to let him take it. Aguilera wanted to hold the gun "for protection from the guys" accompanying Kristin and the other women, "in case of anything."

Kristin, the two other women, the victim (Ignacio), and the other young man (Danny) in the group arrived at Melissa's home some time after 4:00 a.m. Danny gave Kristin a kiss on the cheek as the group got out of the car. Aguilera saw this, grabbed the gun from Berdecia, and rushed with Berdecia and their two other friends toward Kristin and her group. Aguilera first tried to hit Danny with the gun, but that strike did not draw blood. Danny and Ignacio then ran to the front foyer of Melissa's house and banged on the locked door.

Berdecia had with him an asp—an extendable baton—and began to use it to strike Danny, while Aguilera hit Ignacio with the gun. The gun discharged, firing a single round into the side of Ignacio's head, and he later died from that wound.

After the gunshot, Aguilera and his group initially left the scene in their car. Aguilera returned to the scene almost immediately, however, without the gun, and told the police that he had been the shooter. He told the police that he had tried to hit Ignacio with the gun, and that the gun had gone off accidentally.

Aguilera v. State, 975 So. 2d 1270, 1271 (Fla. 3d DCA 2008).

Defense counsel conceded during his opening statement that the Petitioner had used a gun to strike the victim and that the gun accidentally discharged, and had committed manslaughter. (DE# 19-3 at 9-16). The trial court placed the Petitioner under oath and asked whether he agreed with counsel's strategy of conceding his guilt to manslaughter. The Petitioner further stated that he agreed

4

with counsel's strategy, understood that manslaughter was punishable by up to thirty years' imprisonment and that he faced a twenty-five year minimum mandatory sentence up to life under the 10/20/life statute:

> THE COURT: All right. The reason I took this break, is Mr. Entin, under the case of Nixon versus State, where an attorney basically pleads his client guilty to something in opening statement, I just want to make sure that your client was aware of the strategy and is in agreement with the strategy, so later should that happen or some other thing happen, there won't be a rule three saying gee, I had no idea this is what it was going to be. So under the case laws, and the cases coming out more recently, they have asked us to do this. Mr. Aguilera, if you will raise your right hand and be sworn.
> (Thereupon: The defendant was duly sworn.)
> THE COURT: Okay. Mr. Aguilera, in your attorneys very fine opening statement, he basically said that there was a tragedy of the death of [the victim] ... and that in fact in his opening statements he indicated that you are guilty of a manslaughter, which is a less serious crime than second degree murder.
> **It can still carry up to 30 years if the jury finds a firearm was used, it bumps it up a level.**
> MR. ENTIN: **It is not an enumerated offense, Your Honor.**
> THE COURT: I think you might be right.
> MS. FEIN: That is subject to argument.
> THE COURT: I think he is right. I think under HO it bounces it up, but whatever, **it is still a situation that can be argued with the State, and I think of 30 — your attorney may think it is 15,** but I want to make this clear. He basically said yes, you are guilty of something in this case and that guilt is of that of culpable negligence. That is using a firearm as a weapon, and having it discharge while you are hitting Mr. Ramirez in the head. In any event, sounds like that's what his strategy is going to be. I am assuming he spoke to you about this; is that correct?
> THE DEFENDANT: That's the truth.
> THE COURT: All right. Are you in agreement with that strategy? That is what you, that **you realize that he ultimately is going to ask this jury to return a verdict of manslaughter as to the case involving the death of Mr. Ramirez as opposed to second degree murder, and that will**

**carry with is potentially a very long time in prison. You understand that?**
THE DEFENDANT: **Yes, sir.**
THE COURT: Are you in agreement with that?
THE DEFENDANT: Yes, sir.
THE COURT: And without telling me what you have spoken to him about, you have talked about any possible defenses you might have in the case, correct?
THE DEFENDANT: Yes, sir.
THE COURT: Okay. You understand that if you did not want him to do this as your attorney, he can give you advice, but ultimately for an attorney, in opening statement or a closing argument at a later time, pleading their client to something that might be very much in their benefit as opposed to something more serious that ultimately that becomes your decision just like your decision whether or not you testify or not. Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Are you comfortable with the strategy that Mr. Entin has taken and are you in agreement with this?
THE DEFENDANT: Yes, sir.
THE COURT: And has anyone forced you to go along with this or are you doing this of your own free will?
THE DEFENDANT: No, sir.
THE COURT: Of your own free will?
THE DEFENDANT: Yes, sir.
MS. FEIN: If I may add, **Aggravated Battery was also an enumerated of 10/20 life, and that was admitted to in opening. Make sure he understands that.**
THE COURT: And under 10/20 life, well, if someone is killed in the use of a firearm – listen, the bottom line is **under the statute of 10/20 life when a firearm is used in the commission of an offense it can affect certain sentences, possibly the State is saying up to life with a 25 year minimum mandatory. Do you understand that?**
THE DEFENDANT: **Yes, sir.**
THE COURT: **And you have discussed this with Mr. Entin**?
THE DEFENDANT: **Yes, sir.**

(DE# 19-3 at 27-30) (emphasis added).

A jury found him guilty of second-degree murder, aggravated battery with a firearm, and using or displaying a firearm while committing a felony, with special findings that he discharged a

firearm during the offense, killing the victim, and not guilty of aggravated battery with a baton/asp. (DE# 10-2 at 118). The court adjudicated him guilty of the relevant charges and imposed a spilt sentence of forty years' imprisonment with a twenty-five year minimum mandatory for discharging a firearm, followed by ten years of supervised release for the second-degree murder, and a split sentence on the remaining counts of fifteen years' imprisonment with a ten-year minimum mandatory for possession of a firearm, followed by ten years of probation, concurrent. (DE# 10-2 at 122, 124, 128, 138).

He argued on direct appeal that: (1) the trial court fundamentally erred by instructing the jury that it could find him guilty based on his own actions "and/or" those of a co-defendant; (2) the evidence was legally sufficient to support a conviction for manslaughter but not for second-degree murder. (DE# 10-3 at 6). The Third District affirmed in a written opinion on March 12, 2008. Aguilera v. State, 975 So. 2d 1270 (Fla. 3d DCA 2008) (3D05-422). The Florida Supreme Court declined a petition for discretionary review on September 19, 2008. Aguilera v. State, 993 So. 2d 510 (Fla. 2008) (SC08-759).

On November 12, 2009, the Petitioner filed a Rule 3.850 motion for post-conviction relief arguing: (1) counsel was ineffective for failing to file a motion in limine and/or object to the Petitioner's pre-Miranda statements; (2) counsel was ineffective for failing to object to the prosecutor's improper bolstering arguments during closing; (3) counsel was ineffective for failing to object when the trial court gave the erroneous standard jury instruction for manslaughter by act; (4) counsel was ineffective for failing to file a motion for new trial; (5) counsel was ineffective for misadvising the Petitioner to reject the State's

twenty-year plea offer on the crimes charged on the morning of trial, and assuring him he would be found guilty of the lesser offense of manslaughter which carried a maximum sentence of fifteen years; (6) counsel was ineffective for misadvising him that the maximum sentence he would face if he was found guilty of the lesser offense of manslaughter was fifteen years' imprisonment, and he would have accepted the plea if he had known he faced thirty years for that offense; (7) convictions for both second-degree murder while using a firearm, and use of a firearm during the commission of a felony, violated double jeopardy; and (8) counsel's errors cumulatively deprived him of a fair trial (DE# 10-4 at 2). The court granted ground (7), vacated the conviction for Count (4) in an order rendered on July 8, 2011, and summarily denied the remaining claims. (DE# 10-2 at 4); (DE# 10-4 at 53, 57).

The Petitioner filed a notice of inquiry in the trial court on November 10, 2011, requesting an update on the status of his Rule 3.850 motion. (DE# 13 at 4). The court forwarded him a copy of the order vacating Count (4) on December 6, 2011. (DE# 13 at 3).

The Petitioner filed a State habeas petition on December 29, 2011, seeking a belated appeal of the denial of his Rule 3.850 claims. (DE# 10-4 at 59). The Third District granted the petition for belated 3.850 appeal on January 20, 2012. (DE# 10-4 at 66) (3D12-42). In his initial brief, which was filed through counsel, he presented argument with regards to post-conviction claims (3), (4), (5) and (6), arguing: (1) the trial court erred in summarily denying the Petitioner's claim of ineffective assistance of counsel where counsel misadvised him to reject the State's plea offer of twenty years in prison because he would only be convicted at trial of the lesser offense of manslaughter for which the maximum sentence was fifteen years; (2) the trial court erred in denying

the Petitioner's claim that counsel was ineffective for failing to object to the erroneous manslaughter by act instruction and failing to grant relief based on fundamental error in reading this instruction to the jury: (a) counsel was ineffective for failing to object to the erroneous instruction, (b) instructing the jury on manslaughter by culpable negligence does not render the erroneous instruction on manslaughter by act non-fundamental, and (c) the fundamental error in providing the manslaughter by act instruction condemned in <u>Montgomery v. State</u>, 70 So. 3d 603 (Fla. 1st DCA 2009), should be applied retroactively. (DE# 10-4 at 98). The reply brief addressed the foregoing and, in addition, presented argument for post-conviction claim (1), and relied on the facts and allegations contained in the post-conviction motion for post-conviction claims (2), (7) and (8). (DE# 10-4 at 180). The Third District *per curiam* affirmed the denial of his Rule 3.850 motion. <u>Aguilera v. State</u>, 156 So. 3d 1098 (Fla. 3d DCA 2014) (3D12-268). It denied rehearing, written opinion, certification of a question, and rehearing *en banc* on January 8, 2015. (DE# 10-4 at 279). The mandate issued on January 26, 2015. (DE# 10-4 at 281).

The Petitioner filed the instant Section 2254 petition on January 25, 2015.[3]

### III. Statute of Limitations

A one-year statute of limitations applies to petitions for writ of habeas corpus filed by State prisoners. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

(A) the date on which the judgment became final by the

---

[3] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).


In most cases, the limitations period begins to run when the judgment becomes final after direct appeal or at the time when seeking such review has expired. 28 U.S.C. § 2244(d)(1)(A). This period is tolled while a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2). Moreover, AEDPA's one-year limitations period is subject to equitable tolling. Holland v. Florida, 560 U.S. 631 (2010). Equitable tolling is available only if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).


The Petitioner's direct appeal proceedings ended when the ninety-day period for seeking certiorari review in the United States Supreme Court expired on  Florida Supreme Court denied certiorari review on December 18, 2008. See Bond v. Moore, 309 F.3d

770 (11th Cir. 2002) (conviction becomes "final" ninety days after the judgment on direct appeal is issued, within which petition for writ of certiorari could have been filed; ninety days after the Florida Supreme Court denied discretionary review on direct appeal).

This does not establish the "finality" date in the instant case, however, because the Petitioner's judgment and sentence were modified on his partially successful Rule 3.850 motion. The Petitioner did not initially file a post-conviction appeal, so time arguably ran for 123 days before the Petitioner filed his Rule 3.850 belated appeal on December 9, 2011, and remained tolled until the appellate mandate issued on January 26, 2015. See Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286 (11th Cir. 2007) (counting finality from the date of the mandate finalizing the resentencing judgment); McMillan v. Sec'y, Dep't of Corr., 257 Fed. Appx. 249 (11th Cir. 2007) (no statutory tolling for the period between the date the state trial court's denial of a Rule 3.850 motion becomes final and the date the petitioner filed a petition for belated appeal of that denial); Vedner v. Sec'y, Dep't of Corr., 268 Fed. Appx. 898 (11th Cir. 2008) (calculating AEDPA time from the date the state appellate court issues its mandate on appeal from post conviction motion). By that time, the instant Section 2254 petition had already been filed.

The Respondent argues that the instant petition is untimely because the new order vacating the judgment and sentence for Count (6) did not constitute a "resentencing" that would trigger a new finality date pursuant to Ferreira. The Respondent rests this argument on Barros v. Secretary, Department of Corrections, 2009 WL 789920 (M.D. Fla. Mar. 23, 2009), in which the Middle District found that a post-conviction order vacating two of the petitioner's

11

convictions and denying the remaining post-conviction claims did
not restart AEDPA's clock because there was no "resentencing."

The undersigned disagrees. Since the Middle District issued
Barros in 2009, several seminal opinions have been issued that
undermine its conclusion in that case. In 2010, the United States
Supreme Court issued Magwood v. Patterson, 561 U.S. 320 (2010),
holding that courts must look to the *judgment* that is being
challenged to determine whether a petition is "second or
successive" under Section 2244(b), not the *claims* they raise.
Magwood expressly reserved the question of whether a subsequent
petition challenging the undisturbed *conviction* would be "second or
successive" after the state imposes only a new *sentence*. The
Eleventh Circuit resolved that issue in Insignares v. Secretary,
Florida Department of Corrections, 755 F.3d 1273 (11th Cir. 2014).
The Court reiterated principles set forth in Burton and Ferreira,
that "there is only one judgment, and it is comprised of both the
sentence and the conviction." Id. at 1281. It therefore concluded
that "when a habeas petition is the first to challenge a new
judgment, it is not 'second or successive,' regardless of whether
its claims challenge the sentence or the underlying conviction."
Id.

The Respondent's contention that the trial court's vacation of
Count (6) was not a new "judgment" for purposes of Section 2244, is
inconsistent with Magwood and Insignares, and should be rejected.
See Johnson v. United States, 623 F.3d 41 (2nd Cir. 2010) (Section
2255 petition was not "second or successive" because it was filed
after the movant obtained Section 2255 relief on the ground that
his convictions for both armed bank robbery and bank robbery for
which he received concurrent sentences violated double jeopardy,
resulting in a modified judgment and conviction). Cf. Kramer v.

12

United States, 797 F.3d 493 (7th Cir. 2015) (holding that Section 2255 motions attacking the convictions that are undisturbed by prior successful Section 2255 motions are second or successive; noting a circuit split with the Eleventh and Second Circuits, citing Insignares and Johnson).

Therefore, the undersigned recommends rejecting the Respondent's argument and the instant petition should be considered timely.

### IV. Exhaustion and Procedural Default

An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. § 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982). In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal. Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995). The claims must be presented in State court in a procedurally correct manner. Id. Moreover, the habeas applicant must have presented the State courts with the same federal constitutional claim that is being asserted in the habeas petition. "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971); Anderson v. Harless, 459 U.S. 4, 6 (1982)). A petitioner is required to present his claims to the state courts such that the courts have the

13

"opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270, 275-77 (1971). To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337 (11th Cir. 2007) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995)). "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

To circumvent the exhaustion requirement, Petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B); see Duckworth v. Serrano, 454 U.S. 1, 3 (1981). Petitioner makes no such showing here. See Tribble v. Stacy, 2009 WL 2763030 (M.D. Fla. Aug. 27, 2009).

Failure to exhaust a claim can result in a procedural default bar in federal court if it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). The federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Id. at 1303.

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609

14

F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); see also Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. See Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A narrow non-constitutional equitable exception to excuse the procedural default of claims of ineffective assistance of trial counsel. "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez v. Ryan, 132 S.Ct. 1309, 1320 (2012). Therefore, relief is available if (1) state procedures make it virtually impossible to actually raise ineffective assistance of trial counsel claims on direct appeal; and (2) the petitioner's state collateral counsel was ineffective for failing to raise ineffective assistance of trial counsel claims in the state proceedings. See Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1261 n.31 (11th Cir. 2014). The claim of ineffective assistance must be a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S.Ct. at 1318. The exception set forth in Martinez does not apply to attorney errors made in appeals from initial-review collateral proceedings. Id. at 1320. The Eleventh Circuit held in Trevino v. Thaler, 133 S.Ct. 1911 (11th Cir. 2013), that the exception recognized in Martinez applies when a State's procedural framework makes it highly unlikely that a defendant in

15

a typical case will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.

If a petitioner is unable to show cause and prejudice, yet another avenue for considering the merits of the claims despite procedural default exists. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. This exception is "exceedingly narrow in scope" and requires proof of actual innocence, not just legal innocence. Id.; Spencer, 609 F.3d at 1180.

The Respondent contends that Claims (1), (2), and (8) are unexhausted and procedurally defaulted from federal habeas review because they were not raised in the Petitioner's initial post-conviction brief in the Third District Court of Appeal.

The Eleventh Circuit has held in unpublished opinions that a petitioner's failure to raise claims in a post-conviction appeal does not waive those issues. See Darity v. Sec'y, Dep't of Corr., 244 Fed. Appx. 982 (11th Cir. 2007); Cortes v. Gladish, 216 Fed. Appx. 897 (11th Cir. 2007). The case law upon which the Eleventh Circuit relied, Webb v. State, 757 So. 2d 608 (Fla. 5th DCA 2000), has been receded from. See Ward v. State, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); see also Walton v. State, 58 So. 3d 887 (Fla. 2d DCA 2011) (pro se post-conviction petitioner can waive facially insufficient claims by failing to raise them in his brief); Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008) (petitioner appealing a summarily denied post-conviction motion must address all arguments in his brief that he wishes to preserve for appellate review). Therefore, a petitioner's failure to raise claims in a

16

post-conviction initial brief following summary denial in the trial court now constitutes abandonment of those claims. <u>See</u>, <u>e.g.</u>, <u>Bolling v. Jones</u>, 2015 WL 6769103 (N.D. Fla. Oct. 16, 2015); <u>Flynn v. Screws</u>, 2014 WL 10677554 (S.D. Fla. Nov. 20, 2014).

In the instant case, the Petitioner failed to raise claims (1), (2), and (8) in his initial brief on collateral review and thereby abandoned them. Therefore, they are unexhausted and procedurally defaulted from federal habeas review. They will not be addressed in the alternative on the merits in the interest of judicial economy.

<u>V. Standard of Review</u>

Section 2254 relief is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court's decision is "contrary to" clearly established federal law if: (1) the state court applies a rule that contradicts the governing law set forth in United States Supreme Court cases,

17

or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court's precedent. <u>Williams</u>, 529 U.S. at 405-06.

The "unreasonable application" inquiry is a two-step analysis. First the Court "must determine what arguments or theories supported or, [if none were stated], could have supported the state court's decision." <u>Johnson v. Sec'y, Dep't of Corr.</u>, 643 F.3d 907, 910 (11th Cir. 2011) (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011)). Second, the Court must ask "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> In other words, habeas may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with ... precedents" of the Supreme Court of the United States." <u>Harrington</u>, 131 S.Ct. at 786. The petitioner carries the burden to show the state court's decision was contrary to, or an unreasonable application, of federal law. <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).

In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11th Cir. 2002) (citing <u>Williams</u>, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Sec'y, Dep't of Corr.</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

Further, a federal court must presume the correctness of the

18

state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

In the instant case, the Petitioner seeks habeas relief based on ineffective assistance of counsel. The United States Supreme Court clearly established the law governing such claims in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

The Sixth Amendment right to counsel includes effective representation during the plea negotiation process. Padilla v. Kentucky, 130 S.Ct. 1473, 1486 (2010); see generally Strickland, 466 U.S. at 668. However, a defendant has no right to be offered a plea, nor is there any federal right for a judge to accept it. Missouri v. Frye, 132 S.Ct. 1399, 1410 (2012). "[A]s a general

19

rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Frye</u>, 132 S.Ct. at 1408. A "critical obligation of counsel [is] to advise the client of 'the advantages and disadvantages of a plea agreement.'" <u>Padilla</u>, 130 S.Ct. at 1484 (quoting <u>Libretti v. United States</u>, 516 U.S. 29, 50-51 (1995)). To succeed on an ineffective assistance claim with regards to a rejected plea offer, a petitioner must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. <u>Frye</u>, 132 S.Ct. at 1409; <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1384-85 (2012).

<u>VI. Discussion</u>

(3)-(4)   <u>Ineffective Assistance: Manslaughter Jury Instruction</u>

The Petitioner contends that counsel was ineffective for failing to object to the erroneous standard manslaughter by act jury instruction that deprived him of due process and a fair trial. He claims that counsel should have filed a motion for new trial and preserved the issue for appellate review. In his reply, the Petitioner acknowledges that the Florida Supreme Court's opinion which invalidated the Florida Standard Jury Instruction on manslaughter by act, <u>State v. Montgomery</u>, 39 So. 3d 252 (Fla. 2010), had not been issued at the time of his trial. However, he contends that counsel should have challenged the instruction based on an earlier case, <u>Hankerson v. State</u>, 831 So. 2d 235 (Fla. 1st DCA 2002). (DE# 23 at 10).

The manslaughter statute provides that "[t]he killing of a human being by the act, procurement, or culpable negligence of

another, without lawful justification ... and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter....″ § 782.07(1), Fla. Stat.

On February 12, 2009, the First District Court of Appeal found that the Florida standard instruction on manslaughter by act[4] was erroneous because it includes a finding of intent, and certified conflict to the Florida Supreme Court. Montgomery v. State, 70 So. 3d 603 (Fla. 1st DCA 2009) (Montgomery I). The Florida Supreme Court granted review on May 7, 2009. State v. Montgomery, 11 So. 3d 943 (Fla. 2009). On April 8, 2010, the Florida Supreme Court held that intent is not an element of manslaughter by act, and that the then-existing standard jury instruction was fundamentally erroneous because it required the jury to find that the defendant "intentionally caused the death" of the victim.[5] State v. Montgomery, 39 So. 3d 252 (Fla. 2010) (Montgomery II). The Florida Supreme Court held that the instruction was *per se* reversible error because manslaughter is a category-one lesser included offense of the charged offense, and the offense for which he was convicted – the lesser offense of second-degree murder – is only one step

---

[4] The erroneous manslaughter by act standard jury instruction provided: To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
1. (Victim) is dead.
2. a. **(Defendant) intentionally caused the death of (victim)**.
...
      However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide....
      In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
Fla. Std. Jury Instr. (Crim.) 7.7 (2006) (emphasis added).

[5] The Florida Supreme Court in approved an amendment to the standard jury instructions to correct this error December 2008, 997 So. 2d 403 (Fla. 2008). However, the Florida Supreme Court later concluded that the 2008 amendment did not cure the error and the instruction remained fundamentally erroneous. See Daniels v. State, 121 So. 3d 409 (Fla. 2013).

removed from voluntary manslaughter. Id.

The jury was instructed in the instant case as follows:

Before you can find the Defendant guilty of
manslaughter, as a lesser included offense of second
degree murder, the State must prove the following two
elements beyond a reasonable doubt. One, Ignacio Ramirez
is dead. Two, **Abdel Berdecia and or Raynyer Aguilera
intentionally caused the death of Ignacio Ramirez**, or,
Abdel Berdecia or Raynyer Aguilera intentionally procured
the death of Ignacio Ramirez, or three, the death of
Ignacio Ramirez was caused by culpable negligence of
Abdel Berdecia, and or Raynyer Aguilera....

(DE# 19-9 at 8) (emphasis added).

Although the Petitioner's jury instructions included the
erroneous manslaughter-by-act intent language, counsel was not
deficient for failing to object.

The Petitioner's jury was instructed on November 4, 2004,
while the erroneous 2006 standard jury instruction was still in
effect. His direct appeal became final in 2008, years before the
Florida Supreme Court issued Montgomery II on April 8, 2010. It is
well-settled that an attorney's failure to anticipate a change in
the law will not support a claim of ineffective assistance of
counsel. See, e.g., Black v. United States, 373 F.3d 1140, 1146
(11th Cir. 2004) ("[A]ppellate counsel's performance was not
deficient for failing to predict what was not yet a certain
holding."); Jones v. United States, 224 F.3d 1251, 1257-58 (11th
Cir. 2000) ("Since the district court would be required to follow
the law of this circuit until it was overruled... it was not
completely unreasonable for counsel to make a strategic decision to
forego a claim that was a loser under the then-current state of the
law...."); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir.

1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.") (internal quotations and alterations omitted). This rule applies even if the claim, based upon anticipated changes in the law, was reasonably available at the time counsel failed to raise it. See Dell v. United States, 710 F.3d 1267, 1282 (11th Cir. 2013) ("[I]t generally does not fall below the objective standard of reasonableness for ... counsel to fail to raise a claim in anticipation that undeniably wold lose under current law but might succeed based on the outcome of a forthcoming Supreme Court decision."); Pitts v. Cook, 923 F.2d 1568, 1572-74 (11th Cir. 1991) (holding that even though a claim based on Batson v. Kentucky, 476 U.S. 79 (1986), was reasonably available to counsel at the time of trial, failure to anticipate the Batson decision and raise that claim was not ineffective assistance of counsel); Funchess v. Wainwright, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel.").

Because the Petitioner's trial occurred years before Florida's manslaughter-by-act instruction was invalidated by Montgomery, counsel cannot be deemed deficient for failing to object or preserve the issue for appellate review.

The Petitioner's argument that counsel should have challenged the manslaughter jury instruction based on Hankerson is unavailing. In Hankerson, the defendant appealed a second-degree murder conviction on the ground that the jury instruction on the lesser

included offense of *aggravated manslaughter of a child*[6] was confusing and misleading. The First District held that the trial court provided an erroneous instruction on aggravated manslaughter of a child because it contained an intent element, even though the statute states the necessary causation element is culpable negligence, and because the court failed to provide an instruction on simple manslaughter. The Hankerson opinion did not address the standard manslaughter-by-act instruction at issue in the instant case, but rather, the aggravated manslaughter of a child instruction. See Fuller v. Cannon, 2014 WL 7404608 (N.D. Fla. Dec. 30, 2014) (noting that the Montgomery I court relied on Hankerson "not for the proposition that the manslaughter-by-act jury instruction was erroneous, but for the proposition that the nature of the error was fundamental."). Further, the Third District Court of Appeal which decided the Petitioner's case, did not adhere to the First District's reasoning in Hankerson. See, e.g., Leggett v. State, 34 So. 3d 51 (Fla. 3d DCA 2010), *quashed and remanded for reconsideration in light of Montgomery,* (holding that the manslaughter by act instruction is not fundamental error; Judge Cope, dissenting, citing Hankerson). Therefore, Hankerson was not applicable to the Petitioner's case and counsel cannot be deemed deficient for failing to make a Hankerson- based argument at trial. Id.

The Florida courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law and is not based on an unreasonable determination of fact.

---

[6] "A person who causes the death of any person under the age of 18 by culpable negligence under s. 827.03(2)(b) commits aggravated manslaughter of a child...." § 782.07(3), Fla. Stat. Section 827.083(2)(b), in turn, states that "[a] person who willfully or by culpable negligence neglects a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the second degree...." § 827.03(2)(b), Fla. Stat.

Therefore, habeas should be denied.

(5)-(6)    <u>Ineffective Assistance: Misadvice re Plea</u>

The Petitioner contends that counsel was overly confident about his chances of securing a conviction for the lesser offense of manslaughter, and misadvised him that he only faced a maximum fifteen-year sentence if convicted at trial. He claims that both of these errors caused him to reject a twenty-year plea offer for the offenses charged that the State offered on the morning of trial. <u>See</u> (DE# 10-4 at 2). In his reply, the Petitioner appears to concede that he knew a manslaughter conviction was punishable by up to thirty years in prison. (DE# 23 at 5). However, he argues that he did not know that the lesser included offenses of manslaughter and aggravated battery carry a minimum mandatory twenty-five years sentence and are punishable by up to life in prison under the 10/20/life statute. (DE# 23 at 2-3). He claims that he would have accepted the twenty-year plea offer had he known that manslaughter with a firearm and aggravated battery are punishable by up to life in prison.

First, any suggestion that the Petitioner did not know that manslaughter is punishable by up to thirty years in prison is conclusively refuted by the record an should be rejected. <u>See</u> (DE# 19-3 at 27-30); <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) (a defendant's statements in open court carry "a strong presumption of verity" and cannot be overcome by conclusory or unsupported allegations); <u>see also Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (movant is not entitled to habeas relief when the claims are merely conclusory allegations unsupported by specifics or on the face of the record are wholly incredible).

The Petitioner's contention that counsel erred by telling him

that manslaughter is punishable by up to thirty years, and that it actually carries a twenty-five year minimum mandatory up to life under the 10/20/life statute, is mistaken. Manslaughter is a second-degree felony. § 782.07(1). A second degree felony is reclassified as a first-degree felony under the 10/20/life statute if, during the commission of a felony for which the use of a weapon or firearm is not an essential element, the defendant "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony...." § 775.087(1)(b), Fla. Stat. First degree felonies are punishable by "a term of imprisonment not exceeding 30 years...." § 775.082(3)(b)1, Fla. Stat. Therefore, when manslaughter is reclassified as a first-degree felony under the 10/20/life statute, it is punishable by up to thirty years' imprisonment. See, e.g., Webster v. State, 500 So. 2d 285 (Fla. 1st DCA 1986).

The Petitioner's contention that the 10/20/life statute requires a minimum mandatory twenty-five year sentence up to life for manslaughter, is incorrect. Florida Statutes Section 775.087(2) applies to "murder" but not manslaughter, therefore, there is "no basis for application of the mandatory minimums to manslaughter convictions." Murray v. State, 491 So. 2d 1120, 1123 (Fla. 1986); Wilson v. State, 542 So. 2d 433, 434 (Fla. 4th DCA 1989) (noting that Section 775.087(2) "establishes no minimum mandatory sentence for a defendant's possession or use of a firearm while perpetrating a manslaughter.").

Next, the Petitioner contends that counsel conceded his guilt to the "lesser" offense aggravated battery, and that the Petitioner did not know he faced a twenty-five year minimum mandatory up to life for that offense. See (DE# 23 at 9, n.4). The record reveals that counsel conceded the Petitioner's guilt of the lesser offense

26

of *simple* battery.[7] <u>See</u> (DE# 19-8 at 21). Simple battery is not an enumerated felony under the 10/20/life statute and therefore, does not carry a minimum mandatory sentence. <u>See</u> § 775.087, Fla. Stat. Further, the Petitioner's contention that he did not know he potentially faced a minimum mandatory sentence of twenty-five years up to life under the 10/20/life statute if he was convicted at trial, is conclusively refuted by the record. <u>See</u> (DE# 19-3 at 30).

Assuming that counsel expressed confidence to the Petitioner about his chances of securing a manslaughter conviction at trial, this was not ineffective assistance. The record reveals that the defense strategy was to concede guilt of manslaughter in hopes of avoiding a conviction of the charged offenses including second-degree murder. During trial, defense counsel theorized that the Petitioner was in a jealous rage over his girlfriend when he used a gun as a club when it accidentally discharged and killed the victim. <u>See</u> (DE# 19-8 at 15). Arguing that the Petitioner's actions constituted manslaughter rather than second-degree murder was a reasonable strategic decision. <u>See</u>, <u>e.g.</u>, <u>Berdecia v. State</u>, 971 So. 2d 846 (Fla. 3d DCA 2007) (evidence was sufficient to support a manslaughter conviction, as a lesser offense to the second-degree murder charge, where the defendant beat a victim with a baton and admitted that he brought a loaded, cocked gun used in the murder, discussed the gun with men in the car before the attack, and failed to act when the co-defendant took the gun and began using it); <u>Sapp v. State</u>, 913 So. 2d 1220 (Fla. 4th DCA 2005) (evidence was sufficient to support manslaughter conviction where defendant was

---

[7] The prosecutor stated at trial that defense counsel had conceded aggravated battery during opening, but counsel never expressly did so. <u>See</u> (DE# 19-3 at 30). The relevant case law provides that the use of a firearm as a bludgeon qualifies as a deadly weapon and therefore can support an aggravated battery conviction. <u>See</u> <u>Riggins v. State</u>, 557 So. 2d 185 (Fla. 3d DCA 1990). By arguing that the Petitioner was only guilty of simple battery, it appears that counsel was seeking a jury pardon.

under the influence of drugs and alcohol, brought a loaded pistol into a group of people, did not put it away when asked, and mishandled it causing it to discharge). Counsel was not deficient for expressing confidence in the defense's chance of obtaining a manslaughter conviction at trial. See, e.g., Doyle v. Jones, 452 Fed. Appx. 836 (10th Cir. 2011) (defendant failed to demonstrate counsel was ineffective for giving an unrealistic assessment of the case by saying they could "beat the case," resulting in his rejection of a plea offer, where defendant failed to demonstrate either than counsel misadvised him on the relative merits of his options, or that counsel's performance was professionally unreasonable). Counsel's advice that this theory may succeed at trial was within the bounds of reasonable representation and did not amount to deficient performance. See generally Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (strong presumption that experienced and prepared counsel has provided effective representation).

Further, the Petitioner cannot demonstrate prejudice. He rejected a twenty-year offer even though he knew he faced a potential minimum mandatory twenty-five year to life sentence if he was convicted at trial. See (DE# 19-3 at 27-30). This suggests that he was unwilling to plead guilty to the charged offense of second-degree murder under any circumstances. This is supported by the Petitioner's statement at the sentencing hearing explaining that the shooting was accidental and that he does not consider himself a "murderer." See, e.g., (DE# 19-10 at 36-37) ("I never intended – for me the word 'murderer' was not what I referred to myself as. I hit him and the gun was discharged and that's the argument from the first day."). There is no reasonable probability that he would have pled guilty to second-degree murder had counsel provided different advice. See Frank v. United States, 522 Fed. Appx. 779 (11th Cir.

28

2013) (no prejudice where the record showed that the Section 2255 movant would not accept any plea offer from the government that required him to register as a sex offender, which the offer did require, therefore he failed to show he would have accepted the offer even if counsel had advocated doing so); see also Osley v. United States, 751 F.3d 1214, 1225 (11th Cir. 2014) (the court was "hard-pressed" to accept the Section 2255 movant's claim that he would have taken a fifteen-year deal, even if he had known that he would be facing a guidelines range of up to 262 months, when he had previously rejected a lower offer and maintained his innocence throughout the proceedings).

The Florida courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law and is not based on an unreasonable determination of fact. Therefore, habeas should be denied.

(7)   <u>Trial Court Error: Double Jeopardy</u>
Finally, the Petitioner contends that his convictions for both second-degree murder with a firearm and the use of a firearm during the commission of a felony, violated double jeopardy.[8]

Habeas should be denied because the Petitioner was already granted relief on this claim in his State post-conviction proceedings; no further relief is warranted.

VII. Evidentiary Hearing
To the extent petitioner requests an evidentiary hearing, this should be denied. To be entitled to an evidentiary hearing on habeas claims, a petitioner must allege facts that, if proved at

---

[8] It appears that the Petitioner abandoned this claim in his reply. See (DE# 23 at 12). It is addressed here in an abundance of caution.

29

the hearing, would entitle him to relief. See Schriro v. Landrigan, 550 U.S. 465, 474-75 (2007)(a district court is not required to hold an evidentiary hearing if record refutes the factual allegations in the petition or otherwise precludes habeas relief); Atwater v. Crosby, 451 F.3d 799, 812 (11th Cir. 2006) (an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). For the reasons discussed herein, an evidentiary hearing is not required for the disposition of this case and the Petitioner has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing.

## VIII. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254, Rule 11(a). A timely notice of appeal must be filed even if the court issues a certificate of appealability. 28 U.S.C. § 2254, Rule 11(b).

After review of the record, the undersigned finds no substantial showing of the denial of a constitutional right as to movant's claims. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (habeas petitioner must demonstrate reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further). Therefore, it is recommended that the Court deny a certificate of

appealability in its final order. If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in objections to this report.

## IX. Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be dismissed as time-barred, a certificate of appealability not be issued, and this case be closed.

Objections to this report, including any objection with regards to the recommendation regarding the certificate of appealability, may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 11th day of January, 2016.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Reynyer Aguilera, *pro se*
     M496984
     DeSoto Correctional Institution Annex
     13617 SE Hwy. 70
     Arcadia, FL 34266-7800

     Shayne R. Burnham
     Attorney General's Office
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131