**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-20406-CIV-GAYLES/WHITE**

**REYNYER AGUILERA,**
                    **Petitioner,**

            **v.**

**JULIE L. JONES,** *Secretary, Florida*
*Department of Corrections*,
                    **Respondent.**
_____/

**ORDER**

      **THIS CAUSE** comes before the Court on Magistrate Judge Patrick A. White's Supple-

mental Report of Magistrate Judge ("Report") [ECF No. 25] entered on January 13, 2016, as well

as *pro se* Petitioner Reynyer Aguilera's Motion for Leave to Amend Objection to Magistrate's

Recommendation [ECF No. 32]. The Petitioner filed a Petition for Writ of Habeas Corpus with

the Court on February 3, 2015 [ECF No. 1] ("Petition"). The matter was referred to Judge White,

pursuant to 28 U.S.C. § 636(b)(1)(B) and Administrative Order 2003-19 of this Court, for a ruling

on all pretrial, nondispositive matters, and for a Report and Recommendation on any dispositive

matters. [ECF No. 3]. For the reasons that follow, the Petitioner's Motion shall be granted, the

Court's prior Order of February 29, 2016 [ECF No. 30] shall be vacated, the Report shall be

adopted in full, and the Petition shall be denied.

**I.      BACKGROUND**

      **A.      *State Trial and Post-Conviction Proceedings***

      The Court recites only the facts pertinent to ruling on the instant Petition. The underlying

charges arose when the Petitioner confronted his girlfriend when she returned from Miami Beach

with a group of friends. The facts of the incident, as recited by Florida's Third District Court of

Appeal and consistent with the record before this Court, are as follows:

> Aguilera, age twenty-two, lived with his girlfriend Kristin, age twenty, and their 22–month–old daughter. Aguilera and Kristin had lived together about three years, and Aguilera considered her to be his wife.

> On a Friday night that was to prove tragic, Kristin called Aguilera to tell him that she and her step-sister were going to go out with other young women. Aguilera was upset that she was going out without him. Kristin did not tell Aguilera that two young men, Danny and Ignacio, would be accompanying the group to a Miami Beach night club. Aguilera was suspicious, and he and a friend followed the group in the friend's car until that car had a flat tire.

> After repairing the tire, Aguilera called another friend, [] Abdel Berdecia, to meet him at Aguilera's father's house so that they could try to find Kristin and her group. Ultimately, Aguilera, Berdecia, and two other men drove to the home of one of the young women with Kristin, Melissa, to wait for them. They arrived at the house at about 2:00 a.m. and waited in a car.

> Berdecia had a concealed weapons permit, and that night he had his loaded, hol-stered handgun with him. Aguilera knew that Berdecia usually carried a handgun and that he had a permit to do so. When Berdecia got in the car that night, Aguilera saw that he had the gun with him. Aguilera asked Berdecia to let him hold the gun, but Berdecia refused to let him take it. Aguilera wanted to hold the gun "for protection from the guys" accompanying Kristin and the other women, "in case of anything."

> Kristin, the two other women, the victim (Ignacio), and the other young man (Danny) in the group arrived at Melissa's home some time after 4:00 a.m. Danny gave Kristin a kiss on the cheek as the group got out of the car. Aguilera saw this, grabbed the gun from Berdecia, and rushed with Berdecia and their two other friends toward Kristin and her group. Aguilera first tried to hit Danny with the gun, but that strike did not draw blood. Danny and Ignacio then ran to the front foyer of Melissa's house and banged on the locked door.

> Berdecia had with him an asp—an extendable baton—and began to use it to strike Danny, while Aguilera hit Ignacio with the gun. The gun discharged, firing a single round into the side of Ignacio's head, and he later died from that wound.

> After the gunshot, Aguilera and his group initially left the scene in their car. Aguilera returned to the scene almost immediately, however, without the gun, and told the police that he had been the shooter. He told the police that he had tried to hit Ignacio with the gun, and that the gun had gone off accidentally.

*Aguilera v. State*, 970 So. 2d 1270, 1271-72 (Fla. 3d DCA 2008) (footnotes omitted).[1] The Petitioner was charged in Florida case number 02-24536 with second-degree murder with a firearm, aggravated battery with a deadly weapon (asp or baton), aggravated battery with a deadly weapon (firearm), and display or use of a firearm while committing a felony. Report at 3.

At trial, the Petitioner's court-appointed counsel conceded during his opening statement that the Petitioner had used a gun to strike the victim and that the gun accidentally discharged, and therefore had committed manslaughter. *Id.* at 4. The trial judge placed the Petitioner under oath and underwent a colloquy in which he asked the Petitioner whether he agreed with his counsel's strategy of conceding guilt to manslaughter. *Id.* The Petitioner stated that he agreed with counsel's strategy, understood that manslaughter was punishable by up to thirty years' imprisonment, and that he faced a twenty-five–year minimum mandatory sentence up to life under Florida's "10-20-life" statute, Fla. Stat. § 775.087.[2] *See* Report at 5-6 (citing Trial Tr. at 27-30).

During the course of trial, the State called as a witness the police officer who first responded to the underlying incident, who testified that when he arrived at the scene, the Petitioner, without prompting, stated, "I am the shooter. I am the one who shot the guy . . . ," and then, as the same officer patted him down, stated, "[N]o, no, I don't have the gun. I threw it away. I put it—I threw it into a drain." Trial Tr. 521-23; 543-44. The officer further testified that the Petitioner later made several other unprompted statements while he was handcuffed in the back of the police vehicle, and the officer testified that he did not engage in conversation with or otherwise prompt

---

[1]   The Third DCA noted that the Petitioner's admissions regarding the handgun were voluntarily given by the Petitioner to the police shortly after the shooting, and a transcript was read to the jury at trial. Furthermore, it noted that the evidence was conflicting as to whether the Petitioner accidentally discharged the firearm while attempting to strike the victim or whether he pointed the gun at the victim and fired; the gun was not in contact with the victim's head when it fired. *See Aguilera*, 975 So. 2d at 1272 nn. 2-3.

[2]   A provision of the 10-20-life statute not affecting the outcome of this Petition was just recently repealed by the Florida Legislature, effective July 1, 2016. *See* 2016 Fla. Sess. Law Serv. Ch. 2016-7 (C.S.S.B. 228) (West) (Feb. 24, 2016) (providing for the removal of aggravated assault from the list of convictions which carry a minimum term of imprisonment if during the commission of the offense the convicted person possessed a firearm or destructive device).

the Petitioner into making those statements. *Id.* at 527-30. The Petitioner's counsel did not object to this testimony.

During closing argument, counsel for the State made the following three statements: first, that a State witness who made an excited utterance in a 911 call after the underlying shooting was telling the truth; second, that the Petitioner lied to the responding officer about where the gun was; and third, that the Petitioner lied about his concern regarding what transpired and for the victim. Trial Tr. at 1087-88, 1095-96. The Petitioner's counsel did not object to these statements.

The jury found the Petitioner guilty of second-degree murder, aggravated battery with a firearm, and using or displaying a firearm while committing a felony, with special findings that he discharged a firearm during the offense, killing the victim. Report at 6-7. The jury found the Petitioner not guilty of aggravated battery with a baton/asp. *Id.* The court adjudicated him guilty of the relevant charges and imposed a split sentence of forty years' imprisonment with a twenty-five year minimum mandatory for discharging a firearm, followed by ten years of supervised release for the second-degree murder. *Id.* at 7. The court also imposed a concurrent split sentence on the remaining counts of fifteen years' imprisonment—with a ten-year minimum mandatory for possession of a firearm—followed by ten years' probation. *Id.* The Petitioner's conviction and sentence were affirmed on direct appeal, *see Aguilera*, 795 So. 2d 1270, and the Florida Supreme Court denied a petition for discretionary review on September 19, 2008, *see Aguilera v. State*, 993 So. 2d 510 (Fla. 2008).

Judge White's Report accurately summarizes the Petitioner's post-conviction procedural history as follows:

> On November 12, 2009, the Petitioner filed a Rule 3.850 motion for post-conviction relief arguing: (1) counsel was ineffective for failing to file a motion *in limine* and/or object to the Petitioner's pre-*Miranda* statements; (2) counsel was ineffective for failing to object to the prosecutor's improper bolstering arguments during closing; (3) counsel was ineffective for failing to object when the trial court

4

gave the erroneous standard jury instruction for manslaughter by act; (4) counsel was ineffective for failing to file a motion for new trial; (5) counsel was ineffective for misadvising the Petitioner to reject the State's twenty-year plea offer on the crimes charged on the morning of trial, and assuring him he would be found guilty of the lesser offense of manslaughter which carried a maximum sentence of fifteen years; (6) counsel was ineffective for misadvising him that the maximum sentence he would face if he was found guilty of the lesser offense of manslaughter was fifteen years' imprisonment, and he would have accepted the plea if he had known he faced thirty years for that offense; (7) convictions for both second-degree murder while using a firearm, and use of a firearm during the commission of a felony, violated double jeopardy; and (8) counsel's errors cumulatively deprived him of a fair trial. The court granted ground (7), vacated the conviction for [display or use of a firearm during the commission of a felony] in an order rendered on July 8, 2011, and summarily denied the remaining claims.

The Petitioner filed a notice of inquiry in the trial court on November 10, 2011, requesting an update on the status of his Rule 3.850 motion. The court forwarded him a copy of the order vacating Count (4) on December 6, 2011.

The Petitioner filed a State habeas petition on December 29, 2011, seeking a belated appeal of the denial of his Rule 3.850 claims. The Third District [Court of Appeal] granted the petition for belated 3.850 appeal on January 20, 2012. In his initial brief, which was filed through counsel, he presented argument with regards to post-conviction claims (3), (4), (5) and (6), arguing: (1) the trial court erred in summarily denying the Petitioner's claim of ineffective assistance of counsel where counsel misadvised him to reject the State's plea offer of twenty years in prison because he would only be convicted at trial of the lesser offense of manslaughter for which the maximum sentence was fifteen years; (2) the trial court erred in denying the Petitioner's claim that counsel was ineffective for failing to object to the erroneous manslaughter by act instruction and failing to grant relief based on fundamental error in reading this instruction to the jury: (a) counsel was ineffective for failing to object to the erroneous instruction, (b) instructing the jury on manslaughter by culpable negligence does not render the erroneous instruction on manslaughter by act non-fundamental, and (c) the fundamental error in providing the manslaughter by act instruction condemned in *Montgomery v. State*, 70 So. 3d 603 (Fla. 1st DCA 2009)[, *decision approved and certified question answered*, 39 So. 3d 252 (Fla. 2010)], should be applied retroactively. The reply brief addressed the foregoing and, in addition, presented argument for post-conviction claim (1), and relied on the facts and allegations contained in the post-conviction motion for postconviction claims (2), (7) and (8). The Third [DCA] *per curiam* affirmed the denial of his Rule 3.850 motion. *Aguilera v. State*, 156 So. 3d 1098 (Fla. 3d DCA 2014). It denied rehearing, written opinion, certification of a question, and rehearing *en banc* on January 8, 2015. The mandate issued on January 26, 2015.

Report at 7-9 (citations omitted).

**B.** *Federal Proceedings*

The Petitioner filed the instant Section 2254 Petition on January 25, 2015, seeking habeas review on the same eight grounds as in his Rule 3.850 motion in state court. *See generally* Petition; *see also* Report at 2. This Court referred the Petition to Judge White. [ECF No. 3]. After briefing, Judge White issued an initial Report and Recommendation on January 8, 2016, recommending the Petition be denied. [ECF No. 22]. Three days later, the Court received the Petitioner's reply brief. [ECF No. 23]. The Court determined that this reply was timely filed under the prisoner mail-box rule, and referred the Petition back to Judge White for further consideration. [ECF No. 24].

Judge White filed his Supplemental Report and Recommendation on January 13, 2016. *See generally* Report. Judge White again recommended that the Petition be denied. He based his determination on the following conclusions: (1) grounds 1, 2, and 8 are unexhausted and proce-durally defaulted from federal habeas review because they were not raised in his initial appeal brief on collateral review and were therefore abandoned, *see id.* at 13-17; (2) relief on grounds 3 and 4 should be denied because the Petitioner's trial occurred years before Florida's manslaughter-by-act instruction was invalidated in *Montgomery*, and thus the Petitioner's trial counsel cannot be deemed deficient for failing to object or preserve the issue for appellate review, *id.* at 20-25; (3) relief on grounds 5 and 6 should be denied because the Petitioner knew that manslaughter was punishable by up to thirty years in prison and because he knew that he potentially faced a minimum mandatory sentence of twenty-five years up to life under the 10-20-life statute, based on the colloquy in open court at the start of his trial, as well as because trial counsel's argument that the Petitioner's actions constituted manslaughter rather than second-degree murder was a reasonable strategic decision, *see id.* at 25-29; and (4) relief on ground 7 should be denied because the Petitioner was already granted relief on this claim in his State post-conviction proceedings,

*see id.* at 29. This Court affirmed and adopted the Report in full on February 29, 2016. *Aguilera v. Jones*, No. 15-20406, 2016 WL 777202 (S.D. Fla. Feb. 29, 2016).

However, that same day, after that Order was filed, the Petitioner filed a motion asking the Court to allow him to file amended objections ("Am. Objections") [ECF No. 32]. The motion reflects that it was turned over to prison officials for mailing on February 23, 2016. Given that the Petitioner filed his Amended Objections only two days after he filed his original Objections, and finding no prejudice to the Respondent in granting the motion (despite the fact that the Amended Objections were handed over to prison officials one day past the deadline for filing objections), the Court hereby grants the motion, vacates its prior Order, and considers the Amended Objections in reviewing Judge White's Report.

## II.    LEGAL STANDARD

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

## III.   DISCUSSION

### A.     *Objection to Recommendations re: Grounds 1, 2, and 8*

In ground 1, the Petitioner asserts that his trial counsel was ineffective for failing to file a motion *in limine* or object to introduction of certain statements he made, and failing to preserve the issue for appellate review. In ground 2, the Petitioner asserts that his trial counsel was ineffec-

tive for failing to object to the prosecutor's improper bolstering which resulted in a guilty verdict and failed to preserve the issue for appellate review. And in ground 8, the Petitioner asserts that his trial counsel's ineffective assistance resulted in cumulative error. *See* Report at 2. Judge White concluded that the Petitioner procedurally defaulted on these grounds because he failed to raise the claims in his initial brief on collateral review and thus abandoned them. *See id.* at 13-17.

The Petitioner objects to these findings, arguing that his claims should go forward under the exception in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *See* Am. Objections at 2. In *Martinez*, the Supreme Court provided a narrow, non-constitutional, equitable exception to excuse the procedural default of ineffective-trial-counsel claims when (1) state procedures, as a practical matter, make it "virtually impossible" to actually raise ineffective-trial-counsel claims on direct appeal and (2) the petitioner's state collateral counsel was ineffective by not raising ineffective-trial-counsel claims in the state proceedings. *See Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1262 n.31 (11th Cir. 2014) (explaining the rule announced in *Martinez*). Beyond this, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a ***substantial one***, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (emphasis added).

Even if the Petitioner was not procedurally defaulted on these grounds, as Judge White concluded, the Petitioner still would not be entitled to relief. Assuming, *arguendo*, that the first two requirements for circumventing the procedural default bar under *Martinez* are met, the Petitioner has not demonstrated that the underlying ineffective assistance claims have merit. To establish a claim for ineffective assistance, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* The Petitioner fails to demonstrate his claims have merit because has made no showing that his trial counsel made any error at all.

### 1.    Ground 1

The Petitioner contends that his trial counsel was ineffective for failing to file a motion to suppress statements made to the responding officer regarding his admission that he shot the victim and his admission he threw the gun away, as well as the unprompted statements he made while in the back of the police vehicle. Based on a review of the record, it is clear these statements were made voluntarily and any motion to suppress would clearly not have withstood *Miranda* scrutiny. *See United States v. Patane*, 542 U.S. 630, 643-44 (2004); *Oregon v. Elstad*, 470 U.S. 298, 304-09 (1985). Trial counsel's failure to file what would amount to a futile motion to suppress is not error. *See Zakrzewski v. McDonough*, 455 F.3d 1245, 1260-61 (11th Cir. 2006); *see also Brown v. United States*, 219 F. App'x 917, 919 (11th Cir. 2007) (per curiam); *Williams v. United States*, No. 08-14332, 2009 WL 1916732 (S.D. Fla. Feb. 25, 2009).

### 2.    Ground 2

The Petitioner contends that his trial counsel was ineffective for failing to object to the prosecutor's improper bolstering during rebuttal closing argument, which he claims resulted in a guilty verdict. Based on a review of the relevant testimony and the applicable law, this Court finds no error in trial counsel's failure to object to the first statement—that the State's witness who made an excited utterance during a 911 call after the shooting was truthful. The statement was based on reasonable inferences from the evidence, based on a valid statement of the law, and an appropriate response to the defense counsel's closing argument that the witness was not credible. *See Wiggins v. McNeil*, No. 08-22473, 2011 WL 3878335, at *5 (S.D. Fla. Aug. 31, 2011) (finding "no error and no ineffective assistance where counsel failed to object to the prosecutor arguing a witnesses' testimony was worthy of belief, where the argument was based on evidence" (citing

*Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006)); *Stinson v. Sec'y, Dep't of Corr.*, No. 11-0476, 2013 WL 360323, at *13 (M.D. Fla. Jan. 30, 2013) ("Under Florida law, a prosecutor's comments are not improper where they fall into the category of an 'invited response' by the preceding argument of defense counsel concerning the same subject." (citing *Sorey v. State*, 463 So. 2d 1225 (Fla. 3d DCA 1985))).

Similarly, the Court finds no error in trial counsel's failure to object to the second statement—that the Petitioner lied to the responding officer about the location of the gun. A prosecutor is permitted to "submit[] to the jury a conclusion that he or she is arguing can be drawn from the evidence." *Wiggins*, 2011 WL 3878335, at *3; *see also Davis v. State*, 698 So. 2d 1182, 1190 (Fla. 1997) (per curiam) ("It was for the jury to decide what conclusion to draw from the evidence and the prosecutor was merely submitting his view of the evidence to them for consideration."). And finally, the Court finds no error in trial counsel's failure to object to the third statement—that the Petitioner lied about his concern for the victim and about what transpired. This statement was made in rebuttal to defense counsel's closing argument that the Petitioner came back to the scene and cooperated with the police. It was also based on a reasonable inference from the testimony of several witnesses who stated that the Petitioner was angry and that he made statements reflecting his concern about himself and his daughter.

### 3.    Ground 8

The Petitioner contends that trial counsel's ineffective assistance resulted in cumulative error. "A cumulative effects claim is not cognizable for federal habeas review except in very limited circumstances not applicable here. When the Court engage[s] in a sub-claim by sub-claim analysis and has found each to be without merit, unless the trial was rendered fundamentally unfair, the Eleventh Circuit Court of Appeals has declined to entertain 'cumulative error' claims." *Mendoza v. Crews*, No. 12-21894, 2013 WL 3873953, at *18 (S.D. Fla. July 25, 2013) (citing

*Cargill v. Turpin*, 120 F.3d 1366, 1386-87 (11th Cir. 1997)), *aff'd sub nom. Mendoza v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1213 (11th Cir. 2014), *cert. denied sub nom. Mendoza v. Jones*, 135 S. Ct. 1714 (2015); *see also Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). The Court has found that the previous two claims are without merit and, as will be explained below, also finds that the Petitioner's other claims are similarly without merit. Given that, and given that the Petitioner has made no showing that the trial was rendered fundamentally unfair, the Court will not entertain a claim alleging cumulative error.

Accordingly, upon a *de novo* review of the Report, the record, the applicable law, and the Petitioner's objections, the Court shall adopt Judge White's recommendation that habeas review not be granted as to grounds 1, 2, and 8.

### B.     *Objection to Recommendations re: Grounds 3 and 4*

In grounds 3 and 4, the Petitioner contends that his trial counsel was ineffective for failing to object to the then-standard manslaughter-by-act jury instruction and for failing to file a motion for new trial based on the same. His objections to Judge White's findings merely reassert arguments already thoroughly considered and addressed in the Report. Accordingly, upon *de novo* review, Judge White's recommendation on these grounds shall be adopted.

### C.     *Objection to Recommendations re: Grounds 5 and 6*

In ground 5, the Petitioner contends that his trial counsel was ineffective for misadvising him about his chances of securing a manslaughter conviction. And in ground 6, the Petitioner contends that his trial counsel was ineffective for misadvising him regarding the maximum sentence he could receive if he was found guilty of manslaughter. The Petitioner asserts that these errors by his attorney caused him to reject a favorable plea offer from the State.

The Petitioner objects to two of the Report's findings related to these claims: (1) that the 10-20-life statute does not provide for a mandatory minimum sentence when a defendant discharges

a firearm during the commission of manslaughter, and (2) that manslaughter is reclassified to a first-degree felony under the 10-20-life statute and is punishable by thirty years' imprisonment. The Court likewise here concludes that the Petitioner merely reasserts arguments already considered and addressed in the Report. The Court has conducted a *de novo* review of these grounds and shall adopt Judge White's analysis and recommendations.

### D.  *Prejudice*

Even if the Petitioner had established that his trial counsel rendered deficient performance in committing any of the alleged "unprofessional errors" outlined above, he still has not satisfied his burden under *Strickland* to prove that he was prejudiced by any of them. In assessing the potential prejudice from counsel's errors in this context, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. In other words, the Petitioner must show that, absent these errors, the jury would have acquitted him.

The Court is mindful of the Eleventh Circuit's recent instructions:

> [A court's] task is "not to grade counsel's performance," or ask whether the attorney could have performed better, or ask whether some novel, unenacted strategy might have led to a better outcome for the client. *Strickland* speaks only to the small class of cases in which "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment at all' and does not operate as a catch-all mechanism for "fixing" trials [the court] might have conducted differently.

*Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1299-1300 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 697) (internal citations omitted); *see also White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992) ("[W]e are interested in whether the adversarial process at trial, in fact, worked adequately."). To make a prejudice determination, the Court "must consider the totality of the evidence before the . . . jury." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with

overwhelming record support." *Id.* at 696. The record in this case demonstrates that the Petitioner's counsel labored diligently to defend his client and that he subjected the State's case to adversarial testing. It also demonstrates that he lost in the face of overwhelming evidence that his client committed a terrible crime that resulted in the death of the victim. *See Bates*, 768 F.3d at 1300. "That is bad news for [the Petitioner], but it is not a Sixth Amendment violation." *Id.*

> ### E. *Remaining Objections*

The Court has reviewed the Petitioner's remaining objections and finds them to be without merit, with one exception. Following a thorough analysis of the record and the applicable law regarding the statute of limitations, Judge White concluded that the Petition is timely. *See* Report at 9-13. But the Petitioner directs the Court's attention to the Report's "Conclusion," which states, "[I]t is recommended that this petition for writ of habeas corpus be dismissed as time-barred." *Id.* at 31; Am. Objections at 9. The Court presumes this to be merely a clerical error that has no effect on the analysis regarding the Petition, as the post-analysis conclusion states the Petition is timely.

The Court also finds no clear error in the portions of Judge White's analysis and recommendations to which the Petitioner did not object.

> ### F. *Certificate of Appealability*

Under 28 U.S.C. § 2253(c)(1), an appeal may not be taken from a final order in a habeas corpus proceeding unless a certificate of appealability is issued. The certificate must contain a finding that the applicant has made a substantial showing of the denial of a constitutional right and must indicate which specific issue or issues satisfy the required showing. Applying these standards, the Court finds that there is no substantial showing of a denial of a constitutional right. Accordingly, a certificate of appealability shall not issue.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1)    the Petitioner's Motion for Leave to Amend Objection to Magistrate's Recommendation [ECF No. 32] is **GRANTED**;

(2)    this Court's Order Affirming and Adopting Report of Magistrate Judge, dated February 29, 2016 [ECF No. 30], is **VACATED**;

(3)    Judge White's Supplemental Report and Recommendation [ECF No. 25] is **ADOPTED IN FULL**;

(4)    the Petition for Writ of Habeas Corpus [ECF No. 1] is **DISMISSED**;

(5)    a certificate of appealability **SHALL NOT ISSUE**; and

(6)    this case shall remain **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of March, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE